Filed 2/11/15  P. v. Phann CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049296 |
| v. | (Super. Ct. No. 13NF1015) |
| KATBOPHA PHANN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Sheila F. Hanson, Judge.  Affirmed.

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

## INTRODUCTION

A jury found Katbopha Phann guilty, as charged, under count 1 of forgery (Pen. Code, § 470, subd. (d)) and under count 2 of second degree commercial burglary (*id.*, §§ 459, 460, subd. (b)).  After a bench trial, the trial court found to be true allegations that Phann had suffered prior strike convictions.  The court imposed a sentence of 32 months in prison on count 2 and imposed, then stayed execution of, pursuant to Penal Code section 654 (section 654), a concurrent 32-month sentence on count 1.

Phann argues (1) the evidence was insufficient to establish the knowledge and intent required to convict him for forgery and commercial burglary and (2) the trial court erred by imposing a concurrent sentence on count 1.  We conclude substantial evidence supported the convictions and the trial court correctly implemented section 654 by staying execution of sentence on count 1.  We therefore affirm.

## FACTS

Joy Booher, a secretary at Newport Exterminating, arrived at work at 3:30 a.m. on Monday, December 3, 2012.  She opened the office, turned the alarm off, and picked up the mail that had been delivered through a slot in the door on the previous Saturday.  Usually the mail, which includes payments from customers, was bound with a rubber band; however, on that day, Booher found the mail spread about the floor, and there was less of it than usual.  She found, on top of the mail, a stick that was three feet in length with a screw and a sticky substance on the tip.  The mail slot also had a sticky substance on it, and leaves were stuck to the slot.

When Curtis Good, Newport Exterminating's president and owner, arrived at the office, he looked at the area by the door and determined somebody had tried to steal the mail.   He reported the matter to the Irvine Police Department.  Good later watched a video taken by a surveillance camera on the evening of December 2 and

2

morning of December 3, 2012 and saw a person using a stick to pull several pieces of mail through the mail slot in the door. On video from other surveillance cameras, Good saw two other people going down the street at the time the first person was pulling mail through the slot in the door. Good believed all three were in collaboration.

Robert Cohen was a regular monthly customer of Newport Exterminating. He paid Newport Exterminating from The Cohen Family Trust checking account at City National Bank. On November 27, 2012, Cohen's office manager/bookkeeper, Shingly Lee, printed a check from The Cohen Family Trust checking account in the amount of $120 payable to Newport Exterminating. The check bore No. 8788. Lee put the Newport Exterminating invoice number on the memo line of the check. Cohen signed the check, and within a day or two after November 27, 2012, Lee placed the check in a preaddressed envelope provided by Newport Exterminating and mailed it.

On December 6, 2012, Phann went to the La Palma branch of City National Bank to cash a check in the amount of $962.75. He presented the check, along with primary and secondary identification, to Marthann Gonzalez, a senior client officer. A surveillance camera monitored the transaction. The check presented by Phann was check No. 8788 drawn from The Cohen Family Trust checking account with City National Bank. The check was made payable to Katbopha Phann. The memo line of the check had the insertion "Inv #406467."

Gonzalez looked at the identification presented by Phann and concluded it appeared to be genuine. She looked at the check and confirmed it was from a City National Bank account. She noted the check was dated December 3, 2012, and therefore was not considered "stale." The check number in the upper right-hand corner (8788) matched that in the MICR coding, and Gonzalez confirmed the check number was in sequence. The numeric amount of the check matched the written amount, and Cohen's signature on the check matched Cohen's signature in the bank's records. Once Gonzalez confirmed that funds were available from the account to cash the check, she inputted the

information from the check and from Phann's identification into the bank's computer system.  She watched Phann endorse the check before negotiating the check and giving him $962.75 in cash.

Later, in December 2012, Lee noticed The Cohen Family Trust checking account was not balancing according to her records.  She contacted City National Bank and obtained a copy of check No. 8788.  She noticed the amount on the bank's copy of check No. 8788 differed from the amount of $120 on the copy of check No. 8788 in her records.  Lee had not written a check to Katbopha Phann, and had not written a check to him in the amount of $962.75.  Lee noticed the bank's copy of the check referred to "Inv #406467" in the lower left-hand corner, and that invoice number also appeared on her copy of the check.

A City National Bank fraud investigator began investigating check No. 8788 in January 2013.  The fraud investigator testified check No. 8788 stood out as potentially fraudulent because the type font used for the name and address of the payee appeared to be different from the type font used for the rest of the check.

## DISCUSSION

## I.

### Substantial Evidence Supported the Conviction for Forgery.

Under count 1, Phann was convicted of forgery in violation of Penal Code section 470, subdivision (d) which, as relevant here, states:  "Every person who, with the intent to defraud, falsely makes, alters, forges, or counterfeits, utters, publishes, passes or attempts or offers to pass, as true and genuine, any of the following items, knowing the same to be false, altered, forged, or counterfeited, is guilty of forgery."  Phann argues his conviction for forgery must be reversed because the evidence was insufficient to show

4

two elements of the offense: (1) he knew check No. 8788 was false or altered; and (2) he passed or used check No. 8788 with the intent to defraud.

"'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Steele* (2002) 27 Cal.4th 1230, 1249.) We presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) We may reverse for lack of substantial evidence only if "'upon no hypothesis whatever is there sufficient substantial evidence to support'" the conviction or the enhancement. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) The standard of review is the same when the prosecution relies on circumstantial evidence. (*People v. Thomas* (1992) 2 Cal.4th 489, 514.)

Intent and knowledge are subjective mental states that are rarely susceptible of direct proof and, therefore, must be proven by circumstantial evidence. (*People v. Thomas* (2011) 52 Cal.4th 336, 355; *People v. Pre* (2004) 117 Cal.App.4th 413, 420; *People v. Lopez* (1967) 249 Cal.App.2d 93, 98.) "Mere possession of a forged instrument is a circumstance affording some evidence of knowledge of its spurious nature. [Citation.] It is analogous to possession of stolen property which of itself will not prove a theft but 'such possession plus "slight corroborative evidence of other inculpatory circumstances" will suffice.' [Citation.] Presentation of the instrument for encashment is a representation of its genuineness." (*People v. Rosborough* (1960) 178 Cal.App.2d 156, 163.)

Phann was in possession of a forged or altered instrument: check No. 8788 from The Cohen Family Trust checking account at City National Bank. The record included not just slight, but substantial corroborative evidence to show knowledge and intent. The check presented by Phann was payable to him, yet Cohen had no connection

5

to Phann, and Lee had not prepared a check payable to him. Phann presented the check to City National Bank to be cashed and thereby represented its genuineness. Because Cohen had had no dealings with Phann, and Lee had not prepared a check made payable to him, the jury could reasonably infer that Phann knew that a check made payable to him from The Cohen Family Trust was a forgery and that he presented the check to City National Bank with the intent to defraud.

In addition, the check presented by Phann referred to "Inv #406467" on the memo line in the lower left-hand corner. Lee prepared check No. 8788 payable to Newport Exterminating with a reference to invoice "Inv #406467" on the memo line in the lower left-hand corner and mailed the check in a preaddressed envelope within a few days after November 27, 2012. Mail had been stolen from Newport Exterminating at about the same time the check from Cohen would have been delivered. The jury could reasonably infer that Phann, in corroboration with others, stole check No. 8788 from Newport Exterminating, knowingly altered the check to make himself the payee, altered the amount, and presented the check for cashing to City National Bank with the intent to defraud. The fact that Gonzalez found nothing about check No. 8788 to suggest it was false or fraudulent only shows that Phann did an exceptional job of altering the check.

## II.

### Substantial Evidence Supported the Conviction for Second Degree Commercial Burglary.

Under count 2, Phann was convicted of second degree commercial burglary in violation of Penal Code sections 459 and 460, subdivision (b). As relevant here, section 459 states: "Every person who enters any . . . building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." The prosecution's theory was that Phann entered the La Palma branch of City National Bank with the intent to commit theft or forgery by cashing altered check No. 8788. Phann contends the evidence was

6

insufficient to establish he acted with the requisite intent to convict him for commercial burglary.

The jury was instructed that to prove Phann was guilty of commercial burglary the prosecution had to prove he entered into a building with the intent to commit theft or forgery. The jury was instructed on two types of theft: larceny and theft by false pretenses. As to the latter, the jury was instructed with CALCRIM No. 1804, which as given stated that to prove the defendant guilty, the prosecution had the burden of proving: "1. The defendant knowingly and intentionally deceived a property owner or the owner's agent by false or fraudulent representation or pretense; [¶] 2. The defendant did so intending to persuade the owner or the owner's agent to let the defendant take possession and ownership of the property; [¶] AND [¶] 3. The owner or the owner's agent let the defendant take possession and ownership of the property because the owner or the owner's agent relied on the representation or pretense."

We disagree with Phann's assertion that the evidence was insufficient to prove the first of those elements. As we explained in part I. of the Discussion, the evidence at trial was more than sufficient to establish that Phann acted "knowingly and intentionally" to deceive by cashing an altered check. The evidence was sufficient to support the conviction for second degree commercial burglary.

## III.

### The Trial Court Correctly Implemented Section 654.

The trial court imposed a sentence of 32 months in prison on count 2. The court also imposed a concurrent sentence of 32 months in prison on count 1 and ordered execution of that sentence stayed pursuant to section 654 because "the predominant intent and objective of both the crimes . . . were the same." Phann contends that sentence was

7

unlawful because a concurrent term may not be imposed on a count stayed under section 654.

The trial court did not err because it stayed execution of sentence on count 1.  In *People v. Alford* (2010) 180 Cal.App.4th 1463, 1467 (*Alford*), the defendant was convicted of second degree burglary and grand theft with a strike and two prior prison terms.  The trial court sentenced the defendant on the burglary, strike, and prison priors, but stayed imposition of sentence for the grand theft count.  (*Ibid*.)  The Court of Appeal held this was an unauthorized sentence.  (*Id.* at pp. 1466, 1467.)  To provide guidance to the trial court, the Court of Appeal explained that "to implement section 654, the trial court must impose sentence on all counts, but stay execution of sentence as necessary to prevent multiple punishment."  (*Id.* at p. 1469.)

In *Alford*, the court stated:  "Imposition of concurrent sentences is not the correct method of implementing section 654, because a concurrent sentence is still punishment.  [Citations.]"  (*Alford*, *supra*, 180 Cal.App.4th at p. 1468.)  Phann seizes on that passage to assert the trial court erred by imposing a concurrent sentence on count 1.  Indeed, "'[i]t has long been established that the imposition of concurrent sentences is precluded by section 654 [citations] because [under such a sentence] the defendant is deemed to be *subjected* to the term of *both* sentences although they are served simultaneously.'  [Citations.]"  (*People v. Duff* (2010) 50 Cal.4th 787, 796.)

But what those statements mean is imposition of a concurrent term *by itself* does not satisfy section 654.  "[W]hen a court determines that a conviction falls within the meaning of section 654, it is necessary to *impose* sentence but to stay the *execution* of the duplicative sentence."  (*People v. Duff*, *supra*, 50 Cal.4th at p. 796.)  In sentencing on two or more convictions in the same proceeding, the judgment must direct whether the sentences are to run concurrently or consecutively.  (Pen. Code, § 669, subd. (a).)  Thus, the correct procedure to implement section 654 is to impose sentence on all counts— which under Penal Code section 669 means directing concurrent or consecutive

sentences—and then to stay execution of sentence as necessary to prevent multiple punishment. (*Alford*, *supra*, 180 Cal.App.4th at p. 1469.) That is precisely what the trial court did in this case.

## DISPOSITION

The judgment is affirmed.

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

RYLAARSDAM, J.

9